GEORGE S. FISHER, Appellant, *v.* THE STATE.

APPEAL FROM LA SALLE.

Canal lands, where the final payment is made after the first day of May, are not taxable for the year in which such payment is made.

THIS was a suit for taxes. The plaintiff in error appealed, and objected to judgment upon the following lands and lots:

West half of north-west quarter section 25, town. 33, range 4 east of third principal meridian; west half of north-east quarter section 25, town. 33, range 3 east of third principal meridian; north-east quarter of north-west quarter section 25, town. 33, range 3 east of third principal meridian; lot 1, block 37, State's addition to Ottawa; lot 8, block 80, State's addition to Ottawa; lot 2, block 101, town of Ottawa; lot 3, block 101,

town of Ottawa; lot 1, block 104, town of Ottawa; lot 2, block 104, town of Ottawa; lot 3, block 104, town of Ottawa; lot 4, block 104, town of Ottawa.

The judgment was sought to be obtained, at the May term of the La Salle County Court against said lands, for the taxes of 1854. Fisher proved that the above lots of land were purchased of the trustees of the Illinois and Michigan Canal, on the 9th day of May, 1851, on the following terms, to wit:

One-fourth purchase money down, and balance in three equal annual payments, with interest in advance. That said lands were paid for on the 28th day of May, 1854, and conveyed by said board of trustees to Fisher; and that the town lots were conveyed to him by said board of trustees, June 10, 1854. Fisher also proved that there was no improvements on the lands or lots.

The court rendered judgment for the taxes of 1854 against said lots and lands, which is assigned for error.

This cause was heard before H. G. COTTON, Judge of the County Court, at May term, 1855.

GLOVER and COOK, for Appellant.

W. H. L. WALLACE, District Attorney for the State.

CATON, J. By the 58th section of the revenue law of 1853, it is provided, " Government lands entered prior to the first day of May, A. D. 1853, shall be taxable for the year 1853; lands entered or located prior to the first day of May, A. D. 1854, shall be taxable for the year 1854, and so on annually thereafter. Lands sold by the trustees of the Illinois and Michigan Canal shall be taxable from and after the time that full payment therefor is made. School, seminary and saline lands shall be taxable in like manner as lands sold by the general government. Internal improvement lands, sold prior to the first day of June, 1848, shall be taxable for the year 1854, and annually thereafter." The lands in question were purchased of the canal trustees on a credit, and the final payment was made after the first day of May, 1854, but during that year, and the only question is, whether they were taxable for that year.

It is the manifest object of the section quoted, to make the fiscal year, for the purposes of taxation, commence on the first day of May. That is the date fixed upon for the derivation of the title, as to all lands which are made taxable from the derivation of a title from a grantor, in whose hands they were not taxable, unless the legislature intended to make those purchased from the canal trustees an exception. We cannot presume that

they intended to interrupt the harmony of the system thus adopted, by making an exception of this particular class of lands, unless their intention to do so is clear and manifest. We are then to inquire, what was the intention of the legislature in inserting the clause relative to these lands, for it is their intention we are seeking. This clause was undoubtedly inserted in view of some necessity which commended its propriety to the wisdom of the legislature, for we cannot presume that an arbitrary discrimination was deemed just or proper. We think it is manifest that the cause which induced the insertion of this provision is to be found in the 13th section of the canal law of 1843, which provides as follows: " And the said land and lots shall be exempt from taxation of every description, by and under the authority of any law of this State, until after the same shall have been sold and conveyed by the said trustees as aforesaid." Under the provisions of this law, the canal lands were exempt from taxation until they should have been actually conveyed by the trustees, notwithstanding they may have been entirely paid for; and thus, for the want of a mere technical conveyance, lands might be exempt from taxation for an indefinite period, by the neglect of the trustees to make a formal conveyance. The object of the provision was to remedy this evil, and make the owners of these lands bear an equal burthen with other land holders, and not to make them unequal, by imposing a greater burthen upon them. It was the intention of this provision, to specify what interest in this class of land should be taxable, rather than to fix a different period at which such lands should become taxable. Thus understood, this provision puts the purchase of canal lands upon an exact equality with purchasers of land from the general government, as to whom the law had previously declared that their lands should be taxable from the time of entry or location, without waiting for a final conveyance from the general government. If the construction contended for be the true one, then one man might enter a piece of land, and make final payment to the general government on the first day of June, and his land would not be taxable until the next year, while another who should purchase and make final payment to the trustees for an adjoining tract on the same day, would be taxed on that immediately. We cannot suppose that such discrimination and inequality, not to say injustice, was ever designed by the legislature. As before suggested, the object was to obviate an inequality which had previously existed on the other side, and not to create a new one. The design was to declare what extent of right or condition of title should create a liability against the owner to pay taxes upon it, without reference to the day when such right was acquired. The day for the derivation

of such right had been previously fixed, and we are clearly of opinion that the time thus specified was designed to have a general application. It was suggested, in argument, that the fact which was stated, that the canal trustees had sold large amounts of land soon after May in each year, was a sufficient consideration to induce the legislature to insert this special provision, in order to subject the land thus sold to taxation one year earlier than it would have been, had it been purchased of the general government. There is, undoubtedly, sufficient force in the circumstance alluded to, to justify a resort to it to find a motive for the clause under consideration, were it not that we find a much more reasonable and satisfactory explanation in the canal law of 1843, which rendered it necessary to adopt the clause in question, in order to put this class of lands on an equality with all other real estate. We are of opinion that the lands in question were not taxable for the year 1854, and the judgment of the county court must be reversed.

*Judgment reversed.*

SCATES, C. J., dissented.